Argued March 8, reargued July 10, affirmed as modified
July 26, 1967

### PENN PHILLIPS LANDS, INC., *Respondent,*
### *v.* STATE TAX COMMISSION, *Appellant.*

430 P. 2d 349

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General, and Theodore W. deLooze, Assistant Attorney General, Salem.

*Theodore R. Conn* and *James C. Lynch,* Lakeview, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and MCALLISTER, SLOAN, O'CONNELL, GOODWIN, HOLMAN and LUSK, Justices.

GOODWIN, J.

The State Tax Commission appeals a judgment of the Oregon Tax Court which set aside an appraisal of $60 per acre for real property in Lake County and entered a new appraisal of $10 per acre for the tax

year 1965. The new appraisal was not the kind of relief prayed for by the taxpayer, but the taxpayer has not cross-appealed. The Tax Court decision is found in 2 OTR 373 (1966).

The taxpayer in 1961 purchased some 80,000 acres of desert land in the vicinity of Christmas Valley in northern Lake County. Approximately 4,000 acres of this land has been incorporated into a townsite which is not involved in this litigation. Most of the remaining 76,000 acres has been sold on contract to nonresident buyers who have responded to the taxpayer's promotional efforts by purchasing small tracts at prices ranging from $60 to $215 per acre. The record below does not reveal the speed with which these contracts are being paid out, and, as the contracts are not recorded, the taxpayer remains liable for taxes as the owner of record.

The 76,000 acres in question are interspersed in a checkerboard pattern with similar privately owned land assessed in some 230 separate assessments. The taxpayer's lands comprise about 49 per cent of the private lands in an area of some 200,000 acres of similar land known locally as Christmas Valley. None of the private lands in other ownership adjacent to the taxpayer's land were reappraised for tax purposes in 1965. Such lands remained on the tax rolls at the 1957 values of from $1.50 to $5.00 per acre. A substantial acreage in federal ownership is also intermingled with the private land, but is not material in this dispute.

The county assessor testified that he had accomplished a comprehensive reappraisal of the southern half of Lake County by 1963, but that pending a similar reappraisal of the northern half of the county, he had reappraised for 1965 only the land of this one taxpayer. Since there are some 231 separate ownerships

in the immediately adjacent region, and since no other owner in the northern half of the county has been subjected to a reappraisal, the taxpayer contends that it has been singled out for discriminatory treatment in violation of Oregon Constitution, Art I, § 32, and the Fourteenth Amendment of the United States Constitution.

The taxpayer does not deny that it has in fact sold, by means of unrecorded contracts, some 4,000 separate parcels of its land, for prices of $60 per acre to $215 per acre. The taxpayer argues, however, that whether or not the reappraisal of its land at the flat rate of $60 per acre complies with ORS 308.205 (providing that land be assessed according to its market value), this taxpayer is the only taxpayer in the northern half of the county whose land has been so reappraised. The taxpayer contends that, inasmuch as its land is indistinguishable from the contiguous private lands of others which are appraised at not more than $5.00 per acre, the twelve-fold increase in one taxpayer's burden is discriminatory on its face.

The Commission admits that the taxpayer's lands are indistinguishable in soil, vegetation, topography, access to roads, and every other visible particular from the lands of its neighbors. (All of the land in question lies in a sagebrush-covered valley in the high desert and most of it is presently unimproved by roads, fences, or utilities.) The Commission, however, defends the special treatment of this taxpayer on the ground that the taxpayer itself has elected to classify its land as "homesites" and that all the other landowners in the valley regard their lands as suitable only for grazing. The Commission also argues that the taxpayer's promotional activities and resulting sales which have inflated the market prices of the taxpayer's

land are in themselves adequate reasons for classifying this taxpayer's lands differently from the lands of its neighbors.

The Lake County assessor did not attempt to achieve uniformity in the area in the year in question. There is testimony that he made some adjustments in later years. The taxpayer's evidence showed, however, a patently discriminatory assessment for 1965. The checkerboard pattern of ownership was undisputed, and the similarity of neighboring land was established. The promotion and sale of "homesites" by other taxpayers was likewise established. On such evidence the taxpayer has established a prima facie case of unconstitutional discrimination. The Commission's explanation for creating a separate classification applying only to the property of this one taxpayer was that the taxpayer's promotional efforts made its lands unique. The evidence failed to support such an explanation.

The Commission's own brief, in attempting to support its view of the market value of the land in question, asserts that other lands in the vicinity of the taxpayer's holdings are being promoted and sold in similar speculative schemes and at prices comparable to those being received by the taxpayer. The record shows, for example, that among themselves other promoters of such schemes in the neighborhood, in "blocking up" tracts of land, have paid $24.50 per acre as "wholesale" prices for large tracts. Thus, the evidence which helped the Commission's case on market value hurt its case on uniformity.

■ While it is generally said that a taxpayer whose assessment complies with the statutes may not claim judicial relief solely because of the failure of the assessor to raise his neighbors' assessments to comply with the same law, there is an exception to this general

rule. Arbitrary or systematic discrimination in assessment offends the equal-protection-of-the-law and equal-privileges-and-immunities clauses of the Fourteenth Amendment. *Sioux City Bridge v. Dakota County,* 260 US 441, 43 S Ct 190, 67 L Ed 340, 28 ALR 979 (1923).

This court has recognized that it would be wrong to strike down a correct assessment merely because one neighbor's property has been underassessed. *Robinson et ux v. State Tax Commission,* 216 Or 532, 538, 339 P2d 432 (1959). But we also noted in the same case that there is a distinction between an assessor's error in overlooking one or two properties with a resulting underassessment for the few and the situation where one taxpayer is singled out for assessment at full value while all others are left assessed at lesser values. 216 Or at 537.

The *Robinson* case involved a taxpayer whose office building was assessed at true cash value. The complaining taxpayer discovered that a competitor's office building two blocks away was assessed at about one-half of its true cash value. It was conceded that except for that one example of underassessment the complaining taxpayer's property had been assessed in accordance with market values established elsewhere in the neighborhood. We found "relative uniformity" of assessment and denied relief.

The case at bar presents the opposite situation. All adjacent private lands have remained assessed at pre-1957 values and the complaining taxpayer is the only one whose property has been subjected to special treatment. It is this kind of discrimination which runs afoul the federal constitution, as held in *Sioux City Bridge Co. v. Dakota County,* supra.

■■ The taxing authorities may not single out one taxpayer for discriminatory, or selective, enforcement

of a tax law that should apply equally to all similarly situated taxpayers. Such discrimination also offends the uniformity clauses of our own constitution. Oregon Constitution, Art I, § 32, Art IX, § 1; *Reynolds Metals Co. v. State Tax Com.*, 227 Or 467, 362 P2d 705 (1961). The constitutional directive is that property actually taxed be taxed equally. *Crawford v. Linn County*, 11 Or 482, 493, 5 P 738 (1884); and see Etter, *Municipal Tax Differentials*, 37 Or L Rev 1, 38 (1957).

■ The action of the assessor in reappraising only the land of this one taxpayer, while leaving identical private land in the surrounding desert appraised at values of from $1.50 to $5.00 per acre, resulted in a systematic denial of uniformity to this taxpayer and some form of relief is clearly necessary. See *Baldwin Const. Co. v. Essex County Bd. of Taxation*, 16 NJ 329, 108 A2d 598 (1954).

■ The Tax Court based its decision on the theory that the assessor's determination of a $60 market value was premature. The great preponderance of the evidence, however, tended to support the market value urged by the Commission. Accordingly, the $10 value found below cannot be said to be consistent with the demands of ORS 308.205, which provides:

> "True cash value of all property, real and personal, means market value as of the assessment date. True cash value in all cases shall be determined by methods and procedures in accordance with rules and regulations promulgated by the State Tax Commission. With respect to property which has no immediate market value, its true cash value shall be the amount of money that would justly compensate the owner for loss of the property."

It should be noted, however, that the prayer of the taxpayer's complaint was not that its own market

value be reduced below "true cash value," but that the market value of all similarly situated lands adjacent to the taxpayer's lands be brought up to the reassessed values used for the taxpayer's land. This relief could not, of course, be granted in these proceedings, because the tax year is past and the taxpayers who would have been affected thereby were not before the court. Cf. *Switz v. Middletown Twp.,* 23 NJ 580, 130 A2d 15 (1957); and see Lasser, *Assessment of Real Property in New Jersey; An Appraisal of the Baldwin Case,* 9 Rutgers L Rev 497 (1955).

The only practical relief the complaining taxpayer can have at this time is some kind of a refund for the tax year in question. In the nature of the public economy of Lake County, this refund will be paid ultimately by the taxpayer's neighbors. The net result of a refund will approximate the result that would have followed if the assessor had reappraised like property in a like manner in the first place, but its execution will necessarily be indirect and inexact.

The Tax Commission has suggested a formula for computing a refund if its 1965 assessment of this taxpayer's land was wrong because of nonuniformity. We believe its suggestion has merit. It is suggested that the taxpayer's liability for 1965 be recomputed against the 1965 market values on the basis of the millage that would have been in effect if the relevant surrounding region of the county had been reappraised at its true market value at the same time the lands of the taxpayer were reappraised. This recomputation of millage would leave undisturbed the market values assigned to the taxpayer's land in 1965. While the taxes actually paid by the neighboring owners would not be changed ex parte by this decision, the taxes which ought to have been paid by the complaining

taxpayer can be determined, and a refund can be calculated accordingly.

For tax years after 1965, we assume that the assessor has completed the reappraisal program concerning which testimony was given in the record, and that when the northern half of the county was reappraised, substantial uniformity of assessment was achieved. The judgment below should be modified to order a refund computed in accordance with the views expressed herein.

Affirmed as modified.