# PENN PHILLIPS LANDS, INC. *v.* COMMISSION

James C. Lynch, Conn & Lynch, Lakeview, represented the plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, Oregon, represented the defendant.

Decision rendered for plaintiff March 21, 1969.

Petition for rehearing denied April 25, 1969.

Edward H. Howell, Judge.

This case is plaintiff's second appeal to the Tax Court. The details and background of plaintiff's development, promotion and sale of land in Christmas Valley in the northern part of Lake County are set forth in the decisions of this court, 2 OTR 373 (1966), and the Oregon Supreme Court, 247 Or 380, 430 P2d 349 (1967).

In the former case involving the tax year 1965-66 the county assessor, after completing a reappraisal of the southern half of Lake County, increased the value of plaintiff's lands in the Christmas Valley area of the

northern portion of Lake County to $60 per acre for January 1, 1965. The Supreme Court found that the evidence supported this value. However, none of the other private ownerships in the northern half of the county were reappraised by the assessor and remained on the rolls at their 1957 values of $1.50 to $5.00 per acre. Their lands were similar in soil, vegetation and topography to plaintiff's land. In addition other promoters had paid $24.50 per acre for large tracts. The Supreme Court found that the "action of the assessor in reappraising only the land of this one taxpayer, while leaving identical private land in the surrounding desert appraised at values of from $1.50 to $5.00 per acre, resulted in a systematic denial of uniformity to this taxpayer * * *."

The Court held that plaintiff was entitled to a refund for 1965. (See appeal on Decree on Mandate, 251 Or 583, 446 P2d 670 (1968)).

Regarding the reappraisal of the northern part of the county the Supreme Court stated:

"For tax years after 1965, we assume that the assessor has completed the reappraisal program concerning which testimony was given in the record, and that when the northern half of the county was reappraised, substantial uniformity of assessment was achieved. * * *" *Penn Phillips Lands v. Tax Com.,* 247 Or at 388.

In the instant case the plaintiff contends that the assessment procedures which the assessor used for the tax years 1966 and 1967 again resulted in discrimination against plaintiff and that a lack of uniformity existed for 1966 and 1967 as it did for 1965. The commission disagreed and plaintiff appealed.

The tax commission introduced into evidence a new

valuation schedule used by the assessor for the period beginning January 1, 1966. The schedule applied to all the privately-owned land in 21 townships in the Christmas Valley-Fort Rock area of the northern part of Lake County. The tract size and values shown in the schedule were:

| | |
|---|---|
| 5 acre tracts | $150 per acre |
| 10 and 20 acre tracts | 100 per acre |
| 40 and 80 acre tracts | 60 per acre |
| Over 80 acres | 25 per acre |

The schedule also stated: "Operating farms and ranches in the area or that extend into the area were appraised on the new 1965 farm values."

At the trial the plaintiff introduced worksheets showing the number of acres and the assessor's total and per acre valuations of all ownerships in nine townships in the Christmas Valley-Fort Rock area. The list consists of several hundred ownerships and over 400 tax lots in the nine townships. The exhibits show that plaintiff is the record owner of land in all nine townships listed in the exhibits. Plaintiff is the record owner in 154 sections, owning over 80 acres in 131 sections and 80 acres or less in 23 sections.

The plaintiff contends that a lack of uniformity exists in three areas: (1) that the assessor applied the schedule to the other privately-owned lands in the Christmas Valley-Fort Rock area by grouping such lands into ownerships and applying the schedule based on the total acreage, but treated plaintiff's lands as separate tax lots resulting in a higher valuation per tax lot; (2) that the assessor did not apply the schedule to other subdividers in the area in the same manner as he applied it to the plaintiff; and (3) that the assessor failed to follow his own schedule and valued

some land in the area at rangeland value of $4.00 and $7.00 per acre and valued plaintiff's similar land on a tax lot basis.

Regarding the plaintiff's first contention, the assessor's schedule is based on valuations ranging from $150 for 5-acre tracts to $25 for over 80-acre tracts. Where the lands of other individuals were segregated into different tax lots the assessor applied the schedule. However, where such lands, regardless of the number of acres involved, were assessed as one tax lot and the total acreage exceeded 80 acres the lands were valued at $25 per acre.

Where plaintiff was the record owner of over 80 acres its lands were valued on a tax lot basis resulting in values ranging from $150 for 5-acre tracts to $100 for 10 and 20-acre tracts and $60 for 40 and 80-acre tracts. For example, in Section 5 of Township 27 South, Range 19 EWM, plaintiff is the record owner of three 80-acre tracts or a total of 240 acres. The assessor valued this property at $60 per acre instead of $25 per acre for ownerships of over 80 acres under the schedule. In the same section, 319.72 acres adjoining the plaintiff's land were valued at $25 per acre on the basis of one tax lot of over 80 acres under the assessor's schedule. According to the exhibits the assessor followed this procedure of combining the acreage in over 85% of the tax lots involved. The plaintiff is correct and the application of the schedule results in a lack of uniformity.

A more substantial discrepancy exists between the valuation of plaintiff's land and land of other owners in the same area who also have subdivided and sold or offered subdivision land for sale. Like plaintiff, most of their sales were by unrecorded contracts with the title remaining in the name of the vendors. The

evidence showed that at least 19 other owners in the nine townships were subdividing and selling, or attempting to sell, their land in various sized parcels. In almost every instance where the ownership in the section exceeded 80 acres, the land was valued on a total acreage basis although the other subdividers had offered for sale or sold their land in parcels ranging from 5 acres to over 80 acres. A good example of this discrepancy is the assessor's treatment of 371.09 acres in one tax lot in Sections 7 and 18 of Township 27 South, Range 16 EWM, owned by a K. O. Buick. There was testimony that the owner had platted, subdivided and sold various parcels on contract. The assessor valued this entire acreage at $25 per acre for parcels over 80 acres. By contrast, also in Section 18 the plaintiff is the record owner of 160 acres in eight 20-acre tracts which the assessor valued at $100 per acre.

The tax commission argues that the county assessor was justified in assessing plaintiff's property on a tax lot basis instead of applying the schedule to the total acreage because in 1964 the plaintiff requested that its property be assessed according to individual tax lots. This may have been true in 1964 but for the years involved herein, 1966 and 1967, the plaintiff is requesting the application of the schedule on the basis of its total acreage in the same manner the schedule is applied to the other owners in Christmas Valley, and particularly to the other subdividers. In addition, there is no reason that a record owner holding 160 acres in a particular section should have his holdings valued at $25 per acre and another record owner in the same section owning 160 acres of like property in four separate tax lots should have his land valued at $60 per acre. Both owners have a total

of 160 acres, and this is more important than the number of tax lots involved.

The plaintiff's third contention is that other land in the Christmas Valley area which is unimproved sagebrush land similar to plaintiff's is being valued at $4.00 and $7.00 per acre. The schedule shows that the assessor determined that uncultivated land in that area in tracts of over 80 acres should be valued at $25 per acre. The exhibits show that 17 separate tax lots representing 10 ownerships ranging from 77 acres to 5,936 acres were valued at $4.00 or $7.00 per acre. In one instance in Township 26 South, Range 16 EWM, a total of 360 acres, consisting of four 80-acre parcels and one 40-acre parcel, in Sections 3, 4, 14 and 23, are assessed under one tax lot number and valued at $7.00 per acre. However, in the same township in Section 24 the plaintiff is the record owner of 320 acres, consisting of one 80-acre parcel and twelve 20-acre parcels, which are valued at $60 per acre for the 80-acre parcel and $100 per acre for the 20-acre parcels. In fact, in Section 10 one of the plaintiff's 80-acre parcels valued at $60 per acre adjoins one of the above mentioned 80-acre tracts valued at $7.00 per acre.

■■ The assessor's method of applying the schedule discriminates against plaintiff and results in a lack of uniformity in the valuation of plaintiff's lands. This discrimination affects not only the plaintiff but other subdividers in the Christmas Valley area. If the selling activity of plaintiff and other subdividers has affected the values in Christmas Valley to the extent that the assessor has established tract values as listed in the schedule, then the schedule should be applied to all similar unimproved land in the area. This is what the Supreme Court obviously intended when it stated: "The action of the assessor in reappraising only the

land of this one taxpayer, while leaving identical private land in the surrounding desert appraised at values of from $1.50 to $5.00 per acre, resulted in a systematic denial of uniformity to this taxpayer. * * *" 247 Or at 386.

The method of valuation of plaintiff's land for the tax years 1966 and 1967 again resulted in a lack of uniformity. The order of the tax commission is set aside and plaintiff's taxes for 1966 and 1967 shall be recomputed at the value of $25 per acre for all of plaintiff's land in the 21 townships in the Christmas Valley-Fort Rock area.