## COMMONWEALTH, INC. *v.* DEPART-
## MENT OF REVENUE

Edward L. Clark, Clark and Marsh, Salem, Oregon, represented plaintiff.

Alfred B. Thomas, Assistant Attorney General, Department of Revenue, Salem, Oregon, represented defendant.

Decision for plaintiff rendered February 20, 1970.

EDWARD H. HOWELL, Judge.

The only issue in this case is the true cash value for ad valorem tax purposes of Block 24, known as the Salem Plaza, in the City of Salem.

As of January 1, 1967, and January 1, 1968, the assessment dates involved, the plaintiff was the owner of, or responsible for the real property taxes on, 19 tax lots constituting the Plaza.

The issue involves the true cash value of the land only and not the value of the improvements. The assessor and the Department of Revenue found the value of the land to be $1,169,760 for both tax years. The plaintiff contends that the true cash value of the land is not in excess of $910,320.

In early 1960 the plaintiff began purchasing various tax lots in Block 24 to construct the Plaza, and now owns five parcels in fee and has a leasehold interest in the others. Originally the plaintiff planned a large complex consisting of more than Block 24, but the plan was later changed. The buildings constructed by plaintiff in the Plaza, although their value is not at issue, cost approximately $1,350,000. The plaintiff paid approximately $500,000 for the land and spent an additional $100,000 to demolish the existing buildings.

Construction of the Plaza began in August, 1965, before final arrangements had been made to purchase or lease all the various properties involved. The last parcel of land was purchased in October, 1965. In some instances construction had started before plaintiff had tenants for the buildings and plaintiff was required to make many changes in the heating, lighting and plumbing to suit the tenant. As a result plaintiff spent more on acquiring the land and constructing the buildings than it had originally anticipated.

Plaintiff has alleged in its complaint, and contended before the Department of Revenue, that the true cash value of the land for both tax years 1967 and 1968 was $910,320. However, plaintiff produced evidence at the trial in support of a substantially lesser amount. Plaintiff's expert appraiser, who had appraised the property originally for plaintiff in 1966 after the Plaza was opened, testified that the true cash value of the land was $612,500 for 1967 and $600,000 for 1968. He found the cost of the fee land to be $517,000 and the capitalized value of the leased land to be $800,000 for a total cost of $1,317,000 for the land only. However, he found the cost of the land

was excessive and using the income approach appraised the entire complex, land and buildings, at $1,225,000. In August, 1968, the same appraiser made an appraisal of the property for General Acceptance Corporation who had purchased Commonwealth, Inc., and he valued the entire property, land and buildings, at a minimum of $1,100,000 and a maximum of $1,200,000.

The chief appraiser for Marion County, like plaintiff's appraiser, found the cost was $517,000 for the land purchased and found a capitalized value of $835,000 for the land leased by plaintiff, for a total cost of $1,352,000. However, he also recognized that the amount paid by plaintiff for the land was excessive and determined the true cash value to be $1,169,760 for the land for the tax years 1967 and 1968. He based his value primarily on sales of other property in the downtown area and broke the sales down into a front foot and square foot value. He testified that the sales ranged from $1,000 to $1,400 per front foot but were subject to adjustments depending on the location of the properties sold.

The county appraiser admitted that in his opinion the plaintiff's cost of acquisition was uneconomic and more than the land was reasonably worth. He also found that the vehicular traffic flow around the Salem Plaza was a disadvantage to the Plaza compared to the Meier & Frank block and the Payless block, because the one-way streets prevent traffic from circling the Plaza block.

Both appraisers agreed that the parking arrangement for cars at the Plaza was a disadvantage because it is impossible for cars to go to or from the lower parking area to the upper parking area without

leaving the Plaza and driving around one or more blocks. The county appraiser found, however, and properly so, that this parking problem would affect the value of the buildings and not the land.

Because some of the sales used by the county were of questionable comparability, the poor traffic flow around the Plaza and the fact that both appraisers agree that the amount paid for acquiring the land was excessive and uneconomical, the plaintiff is entitled to a reduction in the value of the land from the amount found by the assessor and the Department of Revenue.

For 1966, the tax year previous to the years in question, the assessor valued plaintiff's land at $910,000. This amount is also the value plaintiff alleged in its complaint although the plaintiff's expert found the value of the land to be $612,500 as of January 1, 1967, and $600,000 as of January 1, 1968.

This court finds the true cash value of the land to be $910,000 for both January 1, 1967, and January 1, 1968.