Argued March 4, reversed April 29, 1970

PENN PHILLIPS LANDS, INC., *Respondent, v.*
DEPARTMENT OF REVENUE, *Appellant.*

468 P. 2d 646

*Alfred B. Thomas*, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and Richard A. Uffelman, Assistant Attorney General, Salem.

*James C. Lynch* and *Theodore R. Conn*, Lakeview, argued the cause and filed a brief for respondent.

Before Perry, Chief Justice,* and McAllister, Sloan, O'Connell, Denecke, Holman and Tongue, Justices.

---

* Perry, C.J., did not participate in this decision.

TONGUE, J.

This is the third time that the continuing controversy between these parties has been appealed to this court. All involve the assessment of real property taxes upon lands in Christmas Valley in northern Lake county as the result of plaintiff's development, promotion and sale of lands in that area. For previous decisions by this court, see *Penn Phillips Lands, Inc. v. State Tax Commissioner*, 247 Or 380, 430 P2d 349 (1967) and 251 Or 503, 446 P2d 670 (1968). For previous decisions by the Oregon Tax Court, see 2 OTR 373 (1966) and 3 OTR 399 (1969).

In the first appeal to this court it appeared that in 1961 plaintiff purchased 76,000 acres of land in Christmas Valley (in addition to land for a townsite not involved in this litigation) and that 99 per cent of such lands was sold on contract to nonresident buyers in some 4,000 separate parcels or tracts, at prices ranging from as high as $215 per acre for five acre tracts to $60 per acre for tracts of 160 acres. Based upon these sales the Lake County Assessor reappraised these lands at $60 per acre for the tax year 1965-66. Although he had also reappraised the southern portion of the county, he did not reappraise other lands in northern Lake county, which had previously been appraised at 1957 values of from $1.50 to $5 per acre for similar lands. (See 247 Or at 386-87 and 2 OTR at 374.)

Plaintiff contended in that case that it had been "singled out" for discriminatory treatment, in violation of its constitutional rights. The tax court agreed, and ordered that plaintiff's property be taxed at a value of $10 per acre, instead of $60 per acre. (2 OTR at 375-76.)

This court, in reviewing that decision, found that there had, indeed, been a "systematic denial of uni-

formity", but held that since, according to the evidence of actual sales, plaintiff's lands had a market value or "true cash value" of $60 per acre as of January 1, 1965, "the $10 value found below cannot be said to be consistent with the demands of ORS 308.205 * * *." (247 Or at 386.)

The court held, however, that because other lands in northern Lake county should also have been reappraised, plaintiff should be paid a tax refund for the tax year 1965-66, after the completion of such a reappraisal and based upon a recomputation of the millage rate for all real property in Lake county, including plaintiff's property (247 Or at 387-88 and 251 Or at 587).

The Lake County Assessor then reappraised all of the lands in the Christmas Valley-Fort Rock area as of January 1, 1966, including both plaintiff's lands and other lands, and prepared a new valuation schedule as of that date in which land values were based upon the sizes of the tracts involved, as follows:

| | |
|---|---|
| 5 acre tracts | $150 per acre |
| 10 and 20 acre tracts | $100 per acre |
| 40 and 80 acre tracts | $ 60 per acre |
| Over 80 acres | $ 25 per acre |

The schedule also provided that "operating farms and ranches" in the area were appraised at the "new 1965 farm values", apparently $4 to $7 per acre.

In this case plaintiff does not deny that this schedule is a fair and accurate statement of the "true cash value" of the property in that area, including plaintiff's property, depending upon the sizes of the tracts involved, but contends that it was applied for the tax years 1966-67 and 1967-68 in a manner so as to again

result in a "systematic denial of uniformity". This followed, according to plaintiff, from the application of the schedule to plaintiff's property on a "tax lot" basis, rather than on an over-all "ownership" basis, as will next be explained.

In 1964, apparently after most, if not substantially all, of its property had been sold, plaintiff requested that the county assessor "handle the assessment" of its property "not as one tax lot per township, but as a number of tax lots per township", as a "matter of convenience" to plaintiff. The reason was that the property had been sold by unrecorded land sale contracts in small tracts and in order for plaintiff to allocate the taxes payable by the various contract purchasers (who were required to pay such taxes by the terms of such contracts), it was easier for plaintiff to have the taxes billed according to "tax lots", which reflected such sales, rather than to be billed as one "tax lot" for all of the property owned by plaintiff in a given township.

It is conceded by plaintiff that "in its initiation" these tax lots "accurately reflected the sales" of its property under land sales contracts and that "essentially all" of plaintiff's property was sold under such contracts. Plaintiff offered testimony, however, that when it no longer had "enough inventory" to make it economical to continue the sale of individual lots, it "wholesaled" some unstated amount of its "remnants" by sales which included a number of tax lots. Plaintiff also offered testimony that as a result of "cancellations" it lost "probably 30% of the original sales" and that in the process of the repossession and resale of tracts, a considerable (but unstated) number of tax lots became combined with other tax lots under new land sales contracts. Plaintiff offered "examples" of

this, but did not undertake to prove all of such "combination" sales and the assessor was not notified of such sales or requested to change the original tax lot descriptions.

As a result, however, plaintiff contends that the original tax lots no longer accurately reflect separate land sales contracts to separate purchasers for each separate tax lot. Plaintiff further contends that plaintiff's property (the legal title of which is still recorded in plaintiff's name, since the land sales contracts are unrecorded) should not be taxed on a "tax lot" basis (from $150 per acre to $25 per acre, depending upon the size of the tax lot), but on the basis of the total number of acres standing in plaintiff's name in each township (i.e., at $25 per acre, since plaintiff is the recorded owner of over 80 acres in each township); that this is the manner in which other lands in the area have been taxed, and that the failure of the assessor to adopt the same basis for plaintiff's property resulted in a "systematic denial of uniformity".

More specifically, plaintiff contends on appeal in this case that there was a "lack of uniformity" for these reasons:

"1. That the assessor applied the schedule to the other privately owned lands in the Christmas Valley-Fort Rock area by grouping such land into ownership and applying the schedule based on the total acreage, but valued plaintiff's lands according to the tax lots, resulting in a higher valuation per tax lot.

"2. That the assessor did not apply the schedule to the other subdividers in the area in the same manner as he applied it to plaintiff's lands.

"3. That the assessor failed to follow his own schedule and valued some land in the area at

range land values of $4, $7, and $11 per acre despite the fact that such land was identical to plaintiff's in kind and nature."

1. *Assessment of other lands according to "ownership" and "total acreage."*

■ Plaintiff complains that although adjacent lands in the same area were identical in nature, they were assessed at $25 per acre, based upon a single tax lot for the total acreage owned by the owner in a given township, while plaintiff's lands had been broken down into small tax lots, resulting in assessments of from $60 to $150 per acre, depending on the size of the tax lots. The tax court agreed and held that such an "application of the schedule results in a lack of uniformity" (3 OTR at 402).

It must be remembered, however, that plaintiff did not challenge the fairness and accuracy of the new assessment schedule, under which all lands in the Christmas Valley-Fort Rock area, regardless of their uniformity in nature, were to be reappraised depending upon the sizes of the "tracts" involved, ranging from $150 per acre for a five acre tract to $25 per acre for tracts "over 80 acres", based upon actual sales by plaintiff of tracts in such sizes. It follows that plaintiff is in no position to complain that adjacent lands, held in single ownerships in tracts of "over 80 acres" were not properly assessed at $25 per acre, regardless of the identical nature of such lands.

It also follows that plaintiff is in no position to complain that its own lands have been overvalued or overassessed on the basis of the smaller tax lots. Again, it must also be remembered not only that plaintiff requested the assessor to establish these small tax lots, but that the reason for doing so was that plaintiff sold

"essentially all" of its properties in small tracts which corresponded to such tax lots and at prices which were accurately reflected by the valuation schedule as subsequently adopted by the appraiser, i.e., from $150 per acre for a five acre tract to $60 per acre for 40 and 80 acre tracts.

The mere fact that perhaps 30% of the lands were repossessed and resold and that in some undisclosed number of such resales two or more of the original tracts were combined is wholly insufficient as a basis for contending that the remaining tracts (as sold on the basis of the same small tracts as reflected by the tax lots) were subsequently overvalued or overassessed. It may be that, upon proper request, the tax lot designations should be changed for some of such resales, but no such requests were made.

Similarly, the fact that some undisclosed amount of "remnants" were "wholesaled" does not of itself provide a proper basis to contend that the remaining tracts were overvalued or overassessed.

## 2. *Assessment of other subdivisions.*

Next, plaintiff says that "there was uncontradicted evidence of 25 other subdividers" in the same area, two of which were platted subdivisions, were all making sales by unrecorded land sales contracts (as had been plaintiff's practice), and yet were all assessed at $25 per acre for the reason that such properties had not been "broken down" into separate "tax lots" for each tract sold (as plaintiff had requested), but were shown on the records as being owned by the subdivider and as a single "tax lot". We agree with the tax court that this was a "substantial discrepancy" and "discrimination" against plaintiff. (3 OTR at 402 and 404)

It appears from an examination of the record, however, that only five of the 25 alleged "subdivisions" were engaged in any sales activity prior to January 1, 1966, the date of the completion of the reappraisal and of the new valuation schedule, and that even as to these five "subdivisions" no evidence was offered by plaintiff to establish the extent of the sales activity prior to that date. In other words, it is one thing to appraise the value of a "subdivision" in which sales activity is beginning, but with most of the land still unsold and remaining in the ownership of the developer. *Cf. West Hills v. State Tax Commission,* 255 Or 172, 465 P2d 233 (1970). It is quite another thing, however, to value the lands included in a subdivision in which "essentially all" of the tracts have already been sold, and at prices which are accurately reflected by the appraiser's valuation schedule, depending upon the sizes of such tracts.

This is not to say that when it is shown that the plat of a subdivision in this area has been placed on record and that sales are being made upon the basis of tracts as shown in such a plat, the assessment of such a subdivision at $25 per acre would then be proper. It also does not mean that when sales are being made in an unplatted "subdivision", even after the date of completion of the reappraisal, the assessor should ignore such sales.

It does not follow, however, as plaintiff contends, and as held by the tax court, that because some other subdivisions may have been undervalued by the appraiser, plaintiff is entitled to have all of the lands previously sold by it under contract, and in small tracts, reassessed at $25 per acre, on the assumption that all of such lands in a given township are a single tract of more than 80 acres.

The tax court held that just because in 1964 plaintiff requested separate tax lots for each tract sold by it under contract does not mean that these same tax lots should be used for the years 1966-67 and 1967-68, since "plaintiff is requesting the application of the schedule on the basis of its total acreage in the same manner the schedule is applied to \* \* \* other subdividers."

It does not follow, however, that plaintiff can, by "requesting" the assessment of its property on an "over-all" basis for the tax years 1966-67 and 1967-68, ignore the effect not only of its previous request that its lands be separated into small tax lots, but the fact that such tax lots accurately reflected the sizes of the lots actually sold by plaintiff under land sales contracts, as well as the fact that the prices at which such lots were sold were also accurately reflected by the valuation schedule as subsequently adopted by the county assessor. Indeed, as held by this court in the previous case between these same parties, to appraise and assess plaintiff's lands at any lower values would not be "consistent with the demands of ORS 308.205", under which lands must be assessed at their "true cash value." (See 247 Or at 386)

Since, however, it appears that some of the other subdivisions in the area were not properly appraised and assessed, it remains to consider what, if any, other relief may be available to plaintiff under the record in this case. In *Robinson v. State Tax Commission*, 216 Or 532, 339 P2d 432 (1959) we held (at p 536) that the fact that other similar properties had been underassessed does not entitle a business competitor to have his assessment reduced, although "if there were a great number of underassessments, such might lead to a

conclusion that the basic rule of 'true cash value' was not being followed or that there was a lack of 'relative uniformity'."

In the first appeal by the parties, involving the tax year 1965-66, we held that when all of the property in the northern part of Lake county, other than plaintiff's property, had not been reappraised, and when only plaintiff's property had been reappraised and was being taxed at rates much higher than all of the other property in the area, there was an "arbitrary or systematic discrimination" and that plaintiff was entitled to a tax refund, not based upon a lowering of its assessment, but on a reappraisal of all of the other property in the area. (247 Or at 385-87)

■ Since then, however, all of the other property in the area had been reappraised as of January 1, 1966. Even though there was an undervaluation of some of such property, particularly some other "subdivisions", the record in this case does not support a finding that there has been such a widespread and systematic plan of discrimination, and one involving such a large amount of other property, so as to provide a proper basis to require either the reduction of plaintiff's assessments or the payment of a tax refund based upon a reappraisal of undervalued property.

3. *Assessment of operating ranches in the area.*

Finally, plaintiff complains that adjacent lands of an identical nature, but included in "operating ranches", were assessed at $4 and $7 per acre and should at least have been assessed at tracts of "over 80 acres", at $25 per acre.

Again, however, the valuation schedule as adopted by the assessor, the fairness and accuracy of which is

not challenged by plaintiff, provides that "operating farms and ranches" were appraised "at the new 1965 farm values." Plaintiff has not shown that this was not done.

■ While, as a result, adjacent lands included in operating ranches have been assessed at rates much lower than plaintiff's lands, plaintiff has admitted that its lands had been actually sold in small tracts at much higher prices and has not denied that the valuation schedule, as adopted by the assessor, fairly and accurately reflects the values of such tracts and their "true cash value", depending upon the size of such tracts. It may be that the assessor should reappraise and reassess some of the adjacent lands. For the reasons previously stated, however, the record of this case does not provide a proper basis to either reduce plaintiff's assessments or require the payment of a refund to plaintiff based upon such a reappraisal.

It follows, for all of these reasons, that the assessments of plaintiff's lands by the Lake County Assessor for the tax years 1966-67 and 1967-68 were correct and should be reinstated.

Reversed.

O'CONNELL, J., dissenting.

I agree with the conclusion of the Tax Court that the method of valuation of plaintiff's land for tax purposes for the tax years 1966 and 1967 was discriminatory and therefore violated both the equality provisions of the Fourteenth Amendment and the uniformity provisions of the Oregon Constitution, Art. I, § 32 and Art. IX, § 1.

The evidence is sufficient to support the conclusion that the assessor's action in appraising plaintiff's

property on a different basis than other property of the same kind was a part of the same pattern of systematic discrimination which characterized the appraisal in *Penn Phillips Lands, Inc. v. State Tax Comm.*, 247 Or 380, 430 P2d 349 (1967).

As the Tax Court pointed out, the assessor, in fixing the value of the land of other taxpayers, combined the acreage in 85% of the tax lots involved, whereas in appraising plaintiff's land the tax lots were treated separately.

The majority opinion takes the position that because plaintiff, in 1964, requested that its property be assessed according to individual tax lots and had sold most of the lots according to the division so made, it cannot now complain that the assessor adopted plaintiff's plan. This point, which the Tax Commission argued below, was in my opinion adequately answered by the Tax Court in the following excerpt from its opinion:

> "* * * This may have been true in 1964 but for the years involved herein, 1966 and 1967, the plaintiff is requesting the application of the schedule on the basis of its total acreage in the same manner the schedule is applied to other owners in Christmas Valley, and particularly to the other subdividers." *Penn Phillips Lands, Inc. v. Commission,* 3 OTR 399 at 403 (1969).

The majority holds that plaintiff failed to establish discrimination in the fact that other subdividers were not assessed on the basis of the lots sold out of the subdivision but were assessed on the basis of the whole tract as if not subdivided.

I am not sure that I understand the court's reasoning. The majority deems it significant "that only five

of the 25 alleged 'subdivisions' were engaged in any sales activity prior to January 1, 1966." I do not think that plaintiff, in proving systematic discrimination is limited to proof of sales prior to January 1, 1966. The assessment of the property of others at any time before the trial, if evidencing discrimination, should be considered. The Tax Court noted in its opinion that "[t]he evidence showed that at least 19 other owners in the nine townships were subdividing and selling, or attempting to sell, their land in various sized parcels," and that "[i]n almost every instance where the ownership in the section exceeded 80 acres, the land was valued on a total acreage basis although the other subdividers had offered for sale or sold their land in parcels ranging from five acres to over 80 acres."

The majority attempts to distinguish between the appraisal of the value of a subdivision in which "sales activity is beginning" and the appraisal of the lands included in a subdivision when "essentially all" of the tracts have been sold. I fail to see the relevancy of this distinction where, as in the present case, it is apparent that all of the lots, both those sold by plaintiff and those sold by the other subdividers, were in the same stage of development. *West Hills, Inc. v. State Tax Commission*, 255 Or 172, 465 P2d 233 (1970), relied upon by the majority, is not in point. In that case the subdivided lots were in different stages of development and therefore warranted different evaluations according to their development.

Continuing its treatment of the subdivision sales the majority then shifts to the point that plaintiff had requested the assessor to divide its property into tax lots as designated by plaintiff. This point is without merit for the reasons given by the Tax Court and which I have set out above.

The evidence also shows that the assessor valued plaintiff's unimproved sagebrush land at a higher figure than similar land owned by others. The majority opinion apparently justifies this discrepancy on the ground that plaintiff's land was actually sold, thus establishing a value, whereas the other land was not sold. I do not think that the mere fact of sale is enough to distinguish the value of lands in all other respects of the same character.

I would affirm the judgment of the Tax Court.

SLOAN, J., joins in this dissent.