Argued and submitted April 5, reversed May 19,
petition for rehearing denied June 15, 1971

# COMMONWEALTH, INC., *Respondent, v.*
# DEPARTMENT OF REVENUE, *Appellant.*

484 P2d 1103

EDWARD H. HOWELL, Judge.

*Alfred B. Thomas*, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General of Oregon, and Theodore W. de Looze, Assistant Attorney General, Salem.

*Edward L. Clark, Jr.*, Salem, argued the cause for respondent. With him on the brief were Norma Paulus, and Clark & Marsh, Salem.

Before McALLISTER, Presiding Justice, and DENECKE, HOLMAN, TONGUE, BRYSON, and SCHWAB, Justices.

HOLMAN, J.

This is an appeal by the Department of Revenue from a decision of the Oregon Tax Court in which that court reduced assessments for tax purposes for the years 1967 and 1968 on real property in the central part of the city of Salem. 4 OTR 80 (1970).

The contested assessments involved just the land and not the improvements upon it. The land was assessed for both years at $1,169,760, which was reduced by the Tax Court to $910,000.

The property covers an entire block and is developed by the taxpayer as a shopping center, which is known as Salem Plaza. Approximately one-third of the land is owned by Commonwealth in fee and the balance is controlled under long-term leases of approximately 60 years, during which time Commonwealth is responsible by agreement for the taxes. The one-third purchased outright by Commonwealth cost $517,000. The ground rental on the leased two-thirds, capitalized at six per cent, justifies a value of $835,000 for that portion of the property. Thus computed, the total value of the land, on a cost basis, is $1,352,000. This figure does not take into consideration the cost of demolishing the existing buildings on the property in preparation for the construction of the shopping center, which was approximately $150,000. The taxpayer contends, and the department concedes, that the purchase prices and the cost of the leaseholds were, as a whole, excessive and do not reflect the market. The dispute arises over how much the actual cost should be reduced in order for the property to be properly assessed at market value.

1. It is contended by the taxpayer, and convincing evidence was introduced to sustain the contention, that the planning and execution of both the construction and the rental of the building space were so mismanaged that the cost of the improvements was exorbitant and the rentals were depressed. The taxpayer's expert appraiser valued the entire property, both improvements and land, by the income method and found a value of $1,225,000. He then divided this figure in half to determine the value of the land, because the project's entire cost was about evenly divided between land and improvements. He thus valued the land at $612,500, even though one-third of it had cost the tax-

payer $517,000 and the land rent on the balance justified a value of $835,000 to its owners. The obvious flaw in his appraisal was that the excessive construction cost and the depressed rentals which resulted from improvident planning were used to diminish the value of the land. His method would have been correct only if the distortion in the cost of the land was equal to the distortion in the cost of the improvements and the rents. This could have been determined only by appraising the land separately, and this he did not do. We discard his appraisal as being substantially worthless.

The taxpayer does, however, make some cogent points. The block to the west of the Salem Plaza is occupied by Payless Drugs and the block to the east by Meier & Frank. Both have a lower appraised land value for tax purposes than does the property in question. The Payless property is appraised at an average of approximately $7.00 per square foot and the Meier & Frank property, at $8.00 per square foot. The assessment on the property in this case results in a value of approximately $10.00 per square foot. However, the traffic flow around both the Payless and Meier & Frank blocks is superior to that around the subject property. In the first two cases, a driver can circle the block looking for an entrance to parking accommodations or for a parking place on the street. This is not so in the case of the Salem Plaza block because of the direction of the one-way grids. Once a driver has passed the Plaza on one side, he must circle the adjoining block before he can return to another side.

At the time of the trial, the taxpayer had had its entire interest in the property on the market for approximately two years for $1,100,000 and was not able to sell it.

The professional witness for the department arrived at its appraisal by using the taxpayer's costs and scaling them down in conformance with comparable sales. The taxpayer attacks the sales' comparableness. It also contends the entire market was inflated by its accumulation of the property for the project under discussion. One sale, which seems particularly relevant, was of property in the block in question. In 1961 Bishop's Clothing Store purchased the property at the southeast corner of the block for $140,000. This property subsequently was purchased by the taxpayer in 1965 for $175,000. The 1961 sale was untainted in any way and it was used by the department's appraiser as comparable and was apparently adjusted for the six or seven years' difference in time. In addition, there were two small sales within the block. They covered land which was subsequently leased to the taxpayer. Another sale which was unchallenged as to its comparability involved the northeast corner of the block directly south of the Meier & Frank location. There were sufficient untainted sales to reflect favorably upon the witness's appraisal.

The department's appraiser contends that the Salem Plaza block is more valuable than either the Payless or Meier & Frank blocks because it benefits from the public interest that is generated by these two businesses. It is our conclusion that any such benefit is more than offset by the unfavorable traffic pattern around the Plaza block.

In summation, the taxpayer's cost of land acquisition and the comparable sales point toward the figure which the department contends is proper. On the other hand, there does not seem to be any logical reason for the subject property to be appraised so

much higher than that of the two previously mentioned blocks when it has a markedly inferior traffic pattern. The income does not justify the department's figure, but the evidence indicates that the improvements and the leasing were planned and executed so poorly as to make the improvements virtually valueless.

2. Although Commonwealth is responsible for the taxes for the entire block, it is not its interest alone in the property which is being appraised. The entire beneficial interest in the property is being appraised. *Swan Lake Moulding Co. v. Dept. of Revenue,* 257 Or 622, 478 P2d 393, 480 P2d 713 (1971). If the lessors' interests were assessed separately, it would be extremely difficult for the lessors to contest a value of $835,000 on the two-thirds of the property which they own. This is the value which the present ground rent justifies, even without taking into consideration future increases in ground rent for which the leases provide. The possibility of the bankruptcy of Commonwealth would appear to be the only contingency upon which the prospective ground rent would be devalued. There is no evidence of any such possibility.

If the Bishop sale of 1961 and the property's subsequent purchase in 1965 by the taxpayer are used as an index of the extent of the taxpayer's inflated land cost, the result is interesting. The $140,000 paid by Bishop in 1961 is 80% of the price of $175,000 which was paid by the taxpayer in 1965. Apparently, the 1961 figure was updated by the department to the 1967 and 1968 dates of assessment because it appraised the property as of those dates at $150,200, an increase of 7.3% over the 1961 price. Such an adjustment for six

or seven years of inflation would seem to be reasonable. If the taxpayer's entire land cost of $1,352,000 were treated in exactly the same manner, the result would be a value of $1,160,557, as compared with the assessment of $1,169,760.

3-5. It is our conclusion that the true cash value of the lands for which Commonwealth bears the responsibility of paying the taxes is as assessed. The fact that surrounding lands are appraised at less is no reason for changing the present assessment when it has not been shown that widespread relative non-uniformity exists. *Penn Phillips Land, Inc. v. Dept. of Revenue*, 255 Or 488, 468 P2d 646 (1970); *Robinson et ux v. State Tax Com.*, 216 Or 532, 339 P2d 432 (1959). The taxpayer has failed to carry its burden of proving that the assessment is incorrect.

The judgment of the trial court is reversed.

TONGUE, J., dissenting.

For the reasons stated in the opinion of the Tax Court, I disagree with the reasoning of the majority opinion and, therefore, most respectfully dissent.

McALLISTER, J., joins in this dissent.