George G. KRUMMENACKER
and Antoinette M. Krummenacker,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4611)

David ZIMMERLING,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4615)

George G. and Antoinette M. Krummenacker, and David Zimmerling (taxpayers), argued the cause *pro se.*

Defendant Department of Revenue did not file argument.

Decision for Plaintiffs rendered August 12, 2003.

**HENRY C. BREITHAUPT, Judge.**

Plaintiffs (taxpayers) appeal from a decision of the Magistrate Division holding that the real market value for the disputed property tax accounts (the subject property) is $5,850 for Account 05003233, Tax Lot 1698 (Krummenacker) and $7,064 for Account 00508668, Tax Lot 1699 (Zimmerling).[1] By order of the court, these cases were consolidated for all purposes. Taxpayers submitted facts and argument to the court. Neither Defendant Department of Revenue (the department) nor the county in which the property is located actively defended the case.

## I. FACTS

From the pleadings and other writings filed in this case, the following facts are taken as true.

On October 11, 2000, Clackamas County held a public oral auction of surplus real estate. Offered at the auction was parcel 12, a .75 acre, 40 foot wide strip of vacant land on McNary Road in Milwaukie, Oregon (the parcel). The auction listing states that the assessed market value of the parcel was $7,410 and the minimum bid was $3,705. The parcel was purchased for the minimum bid by four property owners (the purchasers), including taxpayers, each of whom own residential property abutting the parcel.[2]

Subsequently, the purchasers incurred costs to survey and divide the parcel. Each of the purchasers received the portion of the parcel that abutted their residential property. The "Agreement to Purchase Parcel #12 - Surplus Real Estate Property Tax Lot # 22E 18AA 01680" set forth the

---

[1] For ease of reference, the court will refer to Plaintiffs collectively as "taxpayers" and individually by last name. The court will refer to the property under appeal collectively as "the subject property" and individually by tax lot number.

[2] Pursuant to the "Agreement to Purchase Parcel #12 - Surplus Real Estate Property Tax Lot # 22E 18AA 01680," the four property owners purchasing the parcel were: Cinda Belozer, John Kinsman, George Krummenacker, and David Zimmerling.

following estimate for division of the parcel among the purchasers:

| Property Owner | Percent of Total Sq. Ft. | Area (Sq. Ft.) |
|---|---|---|
| Zimmerling | 12.52% | 3,640 |
| Krummenacker | 21.32% | 6,200 |
| Belozer | 12.93% | 3,760 |
| Kinsman | 53.23% | 15,480 |
| Total | 100% | 29,080 |

Because the parcel is located in a different taxing district than the purchasers' residences and subject to different levy rates, new tax lots and new tax accounts were created as a result of this division. None of the new tax accounts are buildable.

## II. ISSUE

What is the real market value of the subject property for the 2001-02 tax year?

## III. ANALYSIS

Real property subject to ad valorem property taxation must be valued at 100 percent of its real market value. ORS 308.232.[3] Real market value (RMV) is defined by ORS 308.205(1) as:

> "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."

When valuing two contiguous tax lots owned by the same person, the assessor may not combine those lots for purposes of the valuation analysis. *Neupert v. Dept. of Rev.*, 13 OTR 407, 411 (1995), *citing Penn Phillips Lands v. Dept. of Rev.*, 255 Or 488, 468 P2d 646 (1976). "ORS 308.205 requires the * * * value of each tax lot to be separately assessed." *First Interstate Bank of Oregon, NA v. Dept. of Rev.*, 306 Or 450, 453, 760 P2d 880 (1988).

---

[3] All references to the Oregon Revised Statutes (ORS) are to 1999.

Taxpayers argue that the RMV of the subject property should be reduced to the amount paid by each taxpayer for their portion of the parcel. That amount includes the costs of purchasing the parcel at auction and subsequently surveying and dividing the parcel among the purchasers. Zimmerling requests Tax Lot 1699 be valued at $1,578. Krummenacker requests that Tax Lot 1698 be valued at $1,905.

According to the evidence submitted to the court by taxpayers, the position of the Clackamas County Assessor (the county) is that the sale price and additional related costs do not reflect the RMV of the subject property.[4] Instead, the county valued Tax Lot 1698 (Krummenacker) at $13,700 and valued Tax Lot 1699 (Zimmerling) at $13,151.

The county's appraisal document prepared for the Magistrate Division hearing titled "Summary and Conclusion" (the summary) describes the subject property as "backyard 'extensions' " and that a value was placed on each of the 'extensions' to reflect the market value of that portion of the property. According to the summary, the county found the sale of an improved lot "immediately next door to the subject properties" provided the "best evidence" of value. The summary identifies that neighboring property as being a **single tax lot**, "similar in size, if not larger than either of the **subject lots plus their 'extensions.'** "[5] (Emphasis added.)

Based on the summary, the court finds that the county's value for the subject property was determined by using sales data of single tax lot properties that are the same size as the total amount of all property, in the **two tax lots**, owned by taxpayers. Although a small adjacent tax lot might be combined into a single tax lot, that separate parcel of land must be valued on a stand-alone basis without regard to

---

[4] Because the department did not actively defend this case, the court will assume that the position of the department is consistent with the position asserted by the county before the Magistrate Division.

[5] The summary also identifies four additional sales of bare land, contained in single tax lots, as supporting the value of the subject lots. The context of the summary indicates to the court that those four properties are also the same size as the total, **two tax lots**, owned by taxpayers.

other adjacent ownership until such an administrative action is taken.[6] *Neupert,* 13 OTR at 412. Consistent with the holdings of *First Interstate* and *Neupert,* the court finds that the county's value must be disregarded because the assessor did not establish a RMV for the subject property on a stand-alone basis, separate from the contiguous tax lots owned by taxpayers.

Taxpayers request that the court value the subject property based on the purchase price plus additional costs. Taxpayers contend that the purchase, at a well-advertised, oral, public auction was an arm's-length sale. Taxpayers also note that other property owners with property abutting the parcel were notified of the auction but failed to place a bid.

■ The sales price of a recent, voluntary, arm's-length sale of property between a willing buyer and seller, both of whom are knowledgeable, although not conclusive, is very persuasive of market value. *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514, P2d 1335 (1973).

The county placed the property for sale at auction with a minimum bid of $3,705. The summary provides the only evidence before the court as to how that minimum bid amount was set.

> "Property Management determined the purchase price of the land. In order to sell the property, they took the RMV from the Assessor's office, which was $7,410 and took 50% of that."

The evidence before the court indicates that the sale price for the parcel was based on a determination by the county property management division as to what the market would bear. The fact that the minimum price was less than RMV is not relevant because the RMV determination at the time of the

---

[6] Property with a limited market, such as the subject property in this case, may present difficulties in determining an opinion of market value. Such limited market properties have relatively few potential buyers. Appraisal Institute, *The Appraisal of Real Estate* 24 (12th ed 2001). Although it may be tempting to value the property based on a "value in use" or "investment value," such as in combination with the adjacent property ownership in this case, Oregon law requires that property be separately valued according to market value or value-in-exchange. *See, e.g., STC Submarine, Inc. v. Dept. of Rev.*, 13 OTR 14, 21-23 (1994), *aff'd*, 320 Or 589, 890 P2d 1370 (1995) (discussing value concepts including "use value" and "investment value").

auction was for property not owned by a taxpayer with an interest in monitoring the amount. The RMV must be viewed as a figure to be tested by the auction and not as a presumably accurate figure.

The court finds that the sales price plus additional costs for surveying and dividing the parcel among the purchasers is persuasive evidence of market value.

## IV. CONCLUSION

For the reasons stated above, taxpayers are entitled to a reduction in value for the subject property for the 2001-02 tax year. Now therefore,

IT IS THE FINDING OF THE COURT that the RMV for Account 05003233, Tax Lot 1698 (Krummenacker) is $1,905.

IT IS FURTHER FOUND that the RMV for Account 00508668, Tax Lot 1699 (Zimmerling) is $1,579.

IT IS FURTHER FOUND that Zimmerlings' request that the court consolidate Tax Lots 1699 and Tax Lot 1619 is denied. Costs to neither party.