Argued and submitted April 6, decision of the Tax Court affirmed August 30, 1988

## FIRST INTERSTATE
## BANK OF OREGON, N.A.,
*Appellant,*

*v.*

## DEPARTMENT OF REVENUE,
*Respondent.*

(OTC 2515; SC S34361)

760 P2d 880

Thomas H. Hoyt, Hoyt, Gaydos & Churnside, P.C., Eugene, argued the cause and filed the briefs for appellant.

Marilyn J. Harbur, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief was Dave Frohnmayer, Attorney General, Salem.

LENT, J.

## LENT, J.

■      We must determine the true cash value of certain real property owned by plaintiff. The main issue is whether each property must be assessed as a separate unit or whether the properties can be assessed as a single property, which would result in a lower assessed value. We hold that each property must be individually assessed to ascertain the true cash value of the properties as required by Oregon's ad valorem taxation laws. We affirm the decision of the Tax Court. *First Interstate Bank v. Dept. of Rev.,* 10 OTR 452 (1987).

The properties that are the subject of this valuation are lots owned by taxpayer in Spencer's Crest subdivision, which is located on the southern boundary of the City of Eugene in Lane County. Spencer's Crest subdivision was subdivided and platted during the real estate boom of the 1970s. The streets in the subdivision are private, but they are paved and have curbs. There are underground utilities, city water and sewer lines throughout the subdivision.

Spencer's Crest was planned to contain 38 lots plus three tracts of land. Two of the three tracts were for common use, and the third, Tract C, was intended for the development of condominiums. Each of the lots was to be used for the construction of a single-family residence. The real estate boom collapsed, and by January 1, 1985, the relevant date for the valuation at issue, only six lots had been sold, and the plans for a condominium had been scrapped. Taxpayer had obtained title to the remaining lots and Tract C by deed in lieu of foreclosure.

The 1985-86 assessments, which are at issue in this case, are based on the true cash value of the properties as of January 1, 1985. ORS 308.205 provides in part:

> "True cash value of all property, real and personal, means the market value of the property as of the assessment date. * * *"

The Lane County Assessor assessed the value of the 32 lots, Tract C and taxpayer's share of the common areas at $440,130. The Lane County Board of Equalization sustained the assessor's valuation. Taxpayer appealed this valuation to the Department of Revenue. The Lane County appraisers had reconsidered their original appraisal and in the proceedings

before the Department took the position that the total value of the properties was $303,700.[1] The Department agreed with this valuation. Taxpayer next appealed to the Tax Court, which upheld the valuation of the Department. Taxpayer appealed to this court and maintains that the proper valuation of all the properties should be $97,000.

Each of the 32 lots is a separate tax lot. Tract C is also a separate tax lot. The term "property" in ORS 308.205 is not further defined. Based solely on its context within the statute, "property" could mean tax lot or it could mean a group of tax lots. ORS 308.205, like all statutes, must be read in the context of other statutes. ORS 308.210(2), (3) and (4) provide for the possibilities that properties can be divided and combined. ORS 308.215(1) provides that the assessment roll shall list each *parcel* of real property. We believe that, when taken in the context of these other relevant statutes, ORS 308.205 requires the true cash value of each tax lot to be assessed separately. The value of each lot by itself, not as a portion of a larger piece of property, must be assessed.[2] *See Penn Phillips Lands v. Dept. of Rev.*, 255 Or 488, 468 P2d 646 (1970).

Taxpayer's position is based on an appraisal of the properties that relies on a "developer's discount" to arrive at the assessed value of the properties. The Tax Court held that this was not a valid method of assessment. This court previously accepted a similar valuation method in *West Hills, Inc. v. Tax Com.*, 255 Or 172, 465 P2d 233 (1970). However, in that case, the valuation of fully developed lots in a subdivision was not contested. In this case, whether the method is appropriate for lots in a fully developed[3] subdivision is at issue, and we consider the issue for the first time.

In April 1983 the Department sent a memorandum to all county tax appraisers. The memorandum stated that a

---

[1] This figure was reached by assigning to Tract C a value of $12,500 and to each of the 32 individual lots a value of $9,100.

[2] It is possible that in certain situations, the highest and best use of a lot would be a part of a group of lots. If that were the case, it would be appropriate to assess that lot based on its value as part of a group. That is not the situation in the present case.

[3] A fully developed subdivision is one with roads and utilities. An undeveloped subdivision has neither. In this case we are concerned only with the appropriate methods of valuation of fully developed subdivisions.

developer's discount could be used to assess the value of multiple lots in a subdivision with a single owner. Taxpayer argues that one of the two valuation methods outlined in that memorandum is the correct method of valuation. In simplified terms, taxpayer's valuation method reduces the market price[4] of the properties by a rate of return based on expected profit, taking into account the expected time necessary to sell the lots.

The rate of return is based on a comparison with comparable subdivisions. The total price of all the sales of individual lots is compared to the original price of the unsubdivided land to develop an expected rate of return for each subdivision. An average rate of return is then established. The rate of return is used to reduce the expected total sales price of all the lots in the subdivision. By reducing the value based on the rate of return in this manner, the value arrived at is not the market price of each lot, but rather the value of the property as an unsubdivided unit. Therefore, this method of valuation does not assess the value of the appropriate unit. Although a separate value is assigned to each lot, this is the value of the lot as a part of the whole, not its value as a separate property.

Reduction by this method results in a determination of the properties' value to the current owner or their value as an investment. This is not the market value, which is the price that each property would receive on the open market. OAR 150-308.205(A)(1)(a). While in certain circumstances the value to the owner might equal the market value, the value to the owner cannot be equated with the market value.

There is no dispute that the highest and best use of each lot is for the construction of a single-family residence. Only by valuing the property at its highest and best use can the true cash value of a property be determined. *Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974). The developer's

---

[4] The market price and the market value are different. The market price is the amount actually paid for a property. The market value is the property's value in the open market. This is normally calculated by averaging the market price of similar property and adjusting for dissimilarities. Obviously it is easier to establish the market value of fungible goods than the market value of real property. *See Widmer v. Department of Revenue*, 4 OTR 361 (1971), *aff'd J.R. Widmer, Inc. v. Dept. of Rev.*, 261 Or 371, 494 P2d 854 (1972).

discount does not assess the value of the properties if put to their highest and best use, but reduces their value to arrive at the value of the properties considered as an investment. Investment is not the highest and best use of the properties.

We agree with the Tax Court that the developer's discount is not a permissible method of valuation in the present case. Because we decide that this method of assessment does not comply with statutory requirements, we do not decide whether the application of a developer's discount would result in a violation of Article I, section 32, of the Oregon Constitution.

■ Taxpayer, as the party challenging the assessment, has the burden to show that a correct appraisal depended on the adoption of its preferred method of valuation. ORS 305.427; *Lewis v. Dept. of Rev.*, 302 Or 289, 728 P2d 1378 (1986). By relying on an improper assessment method, taxpayer has not shown that its assessment was correct; therefore, taxpayer has not met its burden of showing that the assessed value as determined by the Tax Court is incorrect.

Taxpayer has made other arguments. The April 1983 memorandum suggested another method of assessment of properties in this situation. This method also results in a valuation of the properties as a combined unit and does not value the lots as separate units. Therefore, that method is also improper and, to the extent taxpayer relies on that valuation method, taxpayer's argument also fails.

Although we reject a developer's discount in the situation in which the original holding has been subdivided into several lots and the subdivision has been fully developed, it is appropriate to take into account the present legal and physical status of the property. Even if the best use of a property would be for subdivision, the property's present value would take into account the fact that the property would not be presently usable for the sale of individual lots. However, when the property has been subdivided and roads and utilities provided to each lot, there are no longer development costs which would affect the present market value of each lot. Each lot is fully developed and ready to be put to its highest and best use.

The assessment of Tract C reflects this. Although all

agree that Tract C would best be divided into several individual lots, the valuations of the lot by both the Department and taxpayer give it a value only a little higher than one established lot. Its undivided status affects its value, but it is that undivided status, not the common ownership, that affects the market value.

■ · Taxpayer also argued that if its valuation method was not proper, the total assessed value should be $249,390. This was the amount calculated by a Lane County appraiser at one stage in the proceedings. However, this amount was reached by subtracting a cost to hold from the market value. The cost to hold is not different from the rate of return used in the developer's discount method. The true cash value is the market value, ORS 308.205(1), not the market value less a cost to hold.

■ Taxpayer has also argued that the evidence supports the conclusion that there is no immediate market value for the properties. If there is no immediate market value, ORS 308.205(1) requires the property to be valued at the amount of money that would justly compensate the owner for the loss of the property. While taxpayer presented some evidence that the lots will take a long time to sell, the evidence that any lots will not sell within the normal time is inconclusive. Taxpayer has not shown what the normal time for the sale of subdivision lots is.

Taxpayer also failed to present sufficient evidence of the amount it would take to compensate taxpayer justly if the lots were destroyed or taken. The only evidence offered was the statement of an appraiser that he would advise taxpayer to accept $97,000 for the properties if that price were offered. We are not persuaded by this opinion. Among other things, it gives an estimate of the value of the properties considered as a unit, rather than a value of each property. This would mean that the fair compensation for the loss of each lot would be between $1,510 and $2,640. We do not believe that that would be fair compensation for the loss of any of the lots. We have no doubt that taxpayer would have refused any offer for a single lot in that price range. Taxpayer has therefore not met its burden in showing what the assessed value should be. Even if it had been proven that the assessment should be based on the compensation value, taxpayer has not shown what the proper

amount of compensation would be or how it would be calculated.

Finally, taxpayer has argued that the assessment is unconstitutional because it taxes taxpayer's property at a rate higher than the properties in the subdivision that have been sold. This argument is based on the premise that the true cash value of the properties totals $97,000. Because this premise is faulty, taxpayer's argument fails. Taxpayer's properties are being taxed at the same rate as the other properties in the subdivision.

Taxpayer has not shown that either the market value or the compensation value of the properties involved is less than $303,700. The Department does not take the position that the valuation should exceed that amount. Therefore, the decision of the Tax Court establishing the valuation of the properties is affirmed.