178                    April 25, 2013              No. 24

IN THE OREGON TAX COURT
REGULAR DIVISION

John ROEDER,
*Plaintiff,*
*v.*

DEPARTMENT OF REVENUE,
*Defendant*,
*and*

DESCHUTES COUNTY ASSESSOR,
*Defendant-Intervenor.*

(TC 5017)

Plaintiff (taxpayer) appealed from a Magistrate Division decision as to the real market value (RMV) of real property in Deschutes County. Taxpayer argued that his purchase of lots should be valued as a bulk purchase. Pursuant to statute and case law, the court ruled that the proper issue before the court was the RMV of each of the residential lots and not a wholesale valuation. Following trial the court found that taxpayer had not carried his burden of proof due to the fact that taxpayer's appraisal evidence included a relatively small number of comparable sales, and that the county's valuation of the lots was correct.

Trial was held February 10 and 14, 2012, in the courtroom of the Oregon Tax Court, Salem.

Mark G. Reinecke, Bryant Lovlien & Jarvis PC, Bend, argued the cause for Plaintiff (taxpayer).

James C. Wallace, Senior Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant Department of Revenue (the department).

Laurie E. Craghead, Deschutes County Counsel, Bend, argued the cause for Defendant-Intervenor Deschutes County Assessor (the county).

Decision for Defendants rendered April 25, 2013.

**HENRY C. BREITHAUPT, Judge.**

### I.   INTRODUCTION

This matter is before the court following trial. The issue is the real market value of lots in a subdivision in Bend, Oregon. The tax year is 2009-10 and the assessment date is

January 1, 2009. The trial in this matter was held in conjunction with *Roeder Holdings LLC v. Dept. of Rev.*, 21 OTR 183 (2013) (*Roeder II*) and the parties agreed that evidence in either case could be considered in the other case.

## II.   FACTS

The subject property is each of 45 residential subdivision lots in the Reed Pointe subdivision on the east side of Bend, Oregon. The parties do not dispute that the highest and best use of the subject property is for single family residential development in compliance with the existing zoning. The subdivision has been built out to include roadways, curbs and utility connections.

The Reed Pointe subdivision is on the east side of Bend. The subdivision is connected to the west side of the city by way of Reed Market Drive. The lots in the subdivision range in size from approximately 4,000 square feet (.09 acre) to 8,000 square feet (.19 acre).

Plaintiff (taxpayer) purchased the subject lots and two lots that are not the subject of this appeal on July 17, 2009, for a price of $1,551,000 or approximately $33,000 per lot.

## III.   ISSUE

The issue in this case is the real market value (RMV) of each of the lots in the Reed Pointe subdivision that are the subject of this case.

## IV.   ANALYSIS

Taxpayer first contends that this court should adopt the discounted or bulk wholesale market value of the 47 lots purchased in one transaction by taxpayer. Although taxpayer argues that the approach taken by its appraisal expert differs from that rejected in *First Interstate Bank v. Dept. of Rev.*, 306 Or 450, 760 P2d 809 (1988), this court cannot conclude that there is any material difference in the factual or legal context as between the two cases. This court must adhere to the teaching of *First Interstate* and reject taxpayer's assertion that his bulk purchase is to be valued as such. The issue in this case is the value of each of the

residential lots as of the assessment date and not some valuation of a package of lots.

Taxpayer bears the burden of proof in this proceeding. ORS 305.427.[1] Having spent most of his time and effort developing the wholesale approach to valuation, taxpayer's appraisal expert spent little time and effort establishing an RMV for each lot. Although he did perform something of a comparative sales analysis, that analysis relied on only three actual sales.

For the sales he chose to analyze, taxpayer's expert made only qualitative adjustments and provided no documentary support for those adjustments. Importantly, the appraiser made no adjustment for the date of the sale of his comparables, even though the expert acknowledged that the Bend residential lot and general real estate market was in a very dynamic state throughout the years 2008 and 2009. When asked why no such adjustment was even attempted, taxpayer's appraiser stated that such an adjustment would just introduce another level of uncertainty into the appraisal process.

The appraisal witness for taxpayer, using a comparable sales method, concluded an average lot value of $50,000 for the subject lots.

The appraisal witness for Defendant-Intervenor Deschutes County Assessor (the county) used the comparable sales method and looked at 17 sales of residential lots in Bend, bracketing in time the assessment date. The sales were from various locations in the Bend area, with most located on the west side of the city. Some of the sales considered comparable by the witness for the county were up to 50 percent larger in size than the average lot size in the Reed Pointe subdivision. The witness performed a paired-sales analysis to develop a time adjustment factor and applied that to adjust sales occurring before or after the assessment date.

Taxpayer's appraisal expert criticized the conclusion of the county appraiser on the basis that she had made no

---

[1] All references to the Oregon Revised Statutes (ORS) are to the 2011 edition.

adjustment for differences in lot size. Taxpayer's appraiser based that criticism on his view that lot size was an important factor. The appraiser for the county agreed that lot size could be a factor but only when the differences in size were greater than those found as between her comparable sales and the subject lots. Neither witness presented paired-sales or other objective market based analyses to support his or her view. However, the record includes a study of land values on the east side of Bend that supports the conclusions reached by the witness for the county.

Taxpayer's appraisal expert also criticized the conclusion of the county appraiser that sales from the west side of Bend could be used without adjustment to account for what the appraiser considered to be a generally more attractive set of amenities on the west side of Bend. The witness prepared for rebuttal a brief paired-sales analysis to support his view, admitting on cross-examination, however, that his approach was not free from criticism. The court notes that in the appraisal report presented by the witness for taxpayer, he observes with respect to his comparable sales analysis: "It should be noted that the comparable sales are dispersed in varying neighborhoods in Bend. We are of the opinion that, oftentimes, projects such as the subject compete for potential purchasers within subdivisions from varying Bend neighborhoods; therefore, the use of developments throughout the Bend area is considered to be appropriate."

The conclusions of the appraiser for the county are not free from concern as to size and location characteristics of the sales used in her comparable sales approach. However, taxpayer bears the burden of proof on both matters. As to size, the lack of any objective support for the conclusions of taxpayer's witness is a decisive concern for the court. On the issue of location, the testimony of taxpayer's witness is inconsistent with the observation of that same witness in his report.

Most importantly, the relatively small number of arguably comparable sales in the analysis of the witness of taxpayer is of significant concern to the court. That significant concern also exists with the views of the witness as to the need for adjustment to sales that occur in a very

dynamic market. The witness explained his lack of adjustment as based on a desire to not introduce another level of uncertainty into the appraisal process. In times of dynamic market change, uncertainty exists in the market and the court expects expert witnesses to address the uncertainty by analysis of market evidence. Failure to do so simply compounds the level of uncertainty.

## V.   CONCLUSION

For the foregoing reasons the court concludes that taxpayer has not carried its burden of proof that the RMV conclusions of the county are incorrect. The court finds the RMV for each of the subject lots to be as asserted by the county. Now, therefore,

IT IS THE DECISION OF THIS COURT that the RMV for each of the subject lots at issue in this case are as asserted by Defendant-Intervenor Deschutes County Assessor.