Argued February 8, reversed March 31, 1977

MEADOWLAND RANCHES, INC., *Respondent,*
*v.*
DEPARTMENT OF REVENUE, *Appellant.*
(TC 884-964, SC 24489)
562 P2d 183

Alfred B. Thomas, Assistant Attorney General, Salem, argued the cause for appellant. On the briefs with him was Lee Johnson, Attorney General, Salem.

Wendell Gronso, Burns, argued the cause for respondent. With him on the brief was Stephen D. Finlayson, Burns.

Before Denecke, Chief Justice, and Tongue, Howell, Bryson, Lent, Linde and Mengler, Justices.

TONGUE, J.

## TONGUE, J.

This is an appeal by the Department of Revenue from a decision by the Oregon Tax Court which held that there had been an "unconstitutional discrimination" in the assessment of some 20,000 acres of plaintiff's lands in Harney County and ordered that the assessed value of such lands be "redetermined" "as if the property involved was 5-3-1" farm use "property during the two tax years" involved, 1973 and 1974.

It appears from the record that in 1971 the Harney County Assessor became aware of the fact that a large number of sales of unimproved sagebrush land were being made. A "sales market study" was then undertaken, showing the different areas in the county involved and the prices paid for such lands when sold in tracts of different sizes and how such lands were being used.

That study, based on sales data for 384 recorded sales, showed that beginning in 1969 the sales of small tracts of land increased sharply; that 20- and 40-acre tracts of unimproved sagebrush land were being sold for between $140 and $200 per acre; and that the prices paid per acre generally depended on the size of tracts, with the highest prices per acre for the smaller tracts and the lowest prices per acre for the larger tracts. It also appeared that most of these sales were being made not to ranchers for use as rangelands, but to "out of state and out of area owners," with 90 percent out of the state, usually on contracts of sale and mostly "sight unseen." There was also testimony that "people are buying for speculation. They're buying for investment. They're buying for a place to retire."

Based on these facts, the assessor decided to "institute a new class, which we identified as 8-0-0 class, and separate these from the normal prior agricultural lands." 189.548 acres in Harney County were then classified as 8-0-0 lands, of which plaintiff owned approximately 20,000 acres. The new 8-0-0 classifica-

tion of such lands as "recreational property" was based upon classifications established under rules issued by the Department of Revenue (OAR 150.308.215(1)), which included classifications for "residential," "commercial," "industrial," "tract," "farm and range," "forest land," "timber," "multiple housing" and "recreation" property. Based upon that "sales and market study," the assessor then prepared a schedule for the lands in the 8-0-0 class in each of seven separate areas, with prices per acre for lands owned by plaintiff ranging from $150-$200 for tracts of 20 acres to $45 for tracts of 320 acres. The testimony was that the values shown on this schedule were "approximately about 15% under what the market showed."

At the same time, 37,714 acres in Harney County were classified as 5-3-1 "farm use" lands, including seven subclasses of farm lands, ranging from meadow and alfalfa lands to unimproved rangelands. The appraised values of these various subclasses of "farm use" lands were also based upon a separate study of "market data" for sales of lands for use as farm or ranch lands, including grazing lands for cattle. Another 1,293,296 acres of land in Harney County were included in class 5-3-3 as unzoned farm use property, assessed at "farm use values" pursuant to ORS 308.345 and 308.370.[1]

There was testimony that some tracts of identical sagebrush lands owned by local ranchers and adjacent to plaintiff's lands were classified as 5-3-1 "farm use" lands and were assessed at a value of $20 per acre. Most of the lands involved had no improvements, were not fenced, and cattle could roam over both classes of land. The county appraiser testified, however, that such lands were being used as a "part of a total operation of a ranch" whereas the lands owned by

[1]Under the terms of ORS 308.345 and 308.370 unzoned land devoted exclusively to agricultural use is to be assessed at its true cash value for farm use and not at its true cash value "if applied to other than farm use," and comparable sales figures are used only when "the sales so utilized in fact represent sales for bona fide farm use."

plaintiff were "being held for resale and * * * not being farmed or utilized" and that the class 8-0-0 was "the only class we have that we can put it in" and that "all land in Harney County [is] valued based on sales" and on the "use of land," not on "ownership."

The tax court stated that plaintiff's objection to the assessment was not that the land was given too high an appraisal, but was the subject of an unconstitutional discrimination[2] in that under the appraisal one tract of land would be classed as 8-0-0 property and valued at $145 per acre, while another identical tract would be classed as 5-3-1 property and valued at $20 per acre. The tax court agreed with that contention, saying, among other things, that "[t]he great majority of the county's 34,864,279 acres is classified as 5-3-1 farm use property * * *";[3] that "[p]laintiff corporation owns less than one percent of all the property in the county * * *"; that "[p]laintiff's property is receiving a higher assessment than almost all of the identical properties in the county * * *"; and that plaintiff's property was "probably valued too high and the adjoining and interspersed 5-3-1 class farm property was probably valued too low." The tax court then ordered that the taxes on plaintiff's property be recomputed "as if the property involved as 5-3-1 farm use property during the two tax years."[4]

With all due respect to the tax court, we disagree with its holding that there has been an "unconstitutional discrimination" in the assessment of plaintiff's

---

[2] On this appeal, however, plaintiff "does not concede that the property * * * is assessed at market value * * *."

[3] After "motion to correct decision" by the state, the figure 34,864,279 was corrected to 6,518,400, and the statement was further corrected "* * * by deleting 'The great majority of the county's 34,864,279 acres' and inserting in lieu thereof 'The greater part of the 25 percent of the county's 6,518,400 acres which is assessed at market value.'"

[4] As a result of the tax court decision, the assessed value of plaintiff's lands for the year 1973 would be reduced from $1,952,240 to $638,426.15, or a decrease of $1,313,813.85, and the assessed value of plaintiff's lands for the year 1974 would be reduced from $1,898,836 to $628,036.15, or a decrease of $1,270,799.85.

property.[5] In our opinion, the fact that the lands involved are unimproved sagebrush lands identical to some lands which are classified as 5-3-1 "farm use" property is not necessarily controlling.

In *Penn Phillips Lands v. Dept. of Rev.,* 255 Or 488, 468 P2d 646 (1970) ("Penn III"), the plaintiff had purchased 76,000 acres of unimproved lands in Christmas Valley, Lake County, and had sold 4,000 separate tracts to nonresident buyers at prices ranging from $60 per acre for tracts of 160 acres to $215 per acre for five-acre tracts. The Lake County Assessor, based upon a reappraisal of all lands in that area, adopted a valuation schedule based upon the size of the tracts involved, ranging from $25 per acre for tracts over 80 acres to $150 per acre for five-acre tracts. At the same time similar lands included in "operating farms and ranches" in the area were appraised at "farm values," ranging from $4 to $7 per acre.

In that case, as in this case, the tax court had held that there had been an unconstitutional discrimination. We reversed that decision, holding (at 499), that:

> "While, as a result, adjacent lands included in operating ranches have been assessed at rates much lower than plaintiff's lands, plaintiff has admitted that its lands had been actually sold in small tracts at much higher prices and has not denied that the valuation schedule, as adopted by the assessor, fairly and accurately reflects the values of such tracts and their 'true cash value', depending upon the size of such tracts. It may be that the assessor should reappraise and reassess some of the adjacent lands. For the reasons previously stated, however, the record of this case does not provide a proper basis to either reduce plaintiff's assessments or require the payment of a refund to plaintiff based upon such a reappraisal."

---

[5] In holding that there was an "unconstitutional discrimination" the tax court did not identify the constitutional provisions relied upon, except by quoting from our decision in *Penn Phillips Lands v. Tax Com.,* 247 Or 380, 430 P2d 349 (1967) ("Penn I"), in which reference was made (at 386) to the "uniformity clauses" of the Oregon Constitution, Art I, § 32 and Art IX, § 1.

Although the facts in this case are not identical, we believe that the essential facts are so similar as to be controlled by our decision in that case. It is true that on this appeal this plaintiff does not concede that the property was assessed at its market value. The record is clear, however, that the values established by the Harney County Assessor for plaintiff's tracts of land, depending upon the size of such tracts, were based upon and supported by a "sales market study" of numerous actual sales at prices in excess of the values adopted as the assessed value of plaintiff's lands. The statutes of Oregon require that all land "shall be assessed at 100 percent of its true cash value." (ORS 308.232) And the best evidence of such value is normally the "market data" based upon actual sales of the same property. *See Portland Canning Co. v. Tax Com.,* 241 Or 109, 112-13, 404 P2d 236 (1965).

This being so, the tax court was in error in holding that plaintiff's property was assessed at values in excess of its cash market value. It also follows that even if there was an "unconstitutional discrimination," the tax court erred in ordering that plaintiff's property be reassessed at any lower values.

The case relied upon by the tax court as authority for doing so, *Penn Phillips Lands v. Tax Com.,* 247 Or 380, 430 P2d 349 (1967) ("Penn I"), did not order that the lands involved be reassessed at lower values because of the discrimination found in that case, but that there be a recomputation of millage rates (see 247 Or at 387-88). Indeed, the tax court was also reversed in that case for lowering the assessed values of plaintiff's lands, even upon finding an unconstitutional discrimination. *See also Penn Phillips Lands v. Dept. of Rev., supra,* at 497 ("Penn III"), holding that to do so would "not be 'consistent with the demands of ORS 308.205', under which lands must be assessed at their 'true cash value.' "

Upon the question of discrimination, we hold that plaintiff's evidence on this case was insufficient to

establish that the "number of under-assessments" were so large as to "lead to a conclusion that the basic rule of 'true cash value' was not being followed or that there was a lack of 'relative uniformity,' " within the meaning of that rule as stated in *Robinson et ux v. State Tax Com.,* 216 Or 532, 536, 339 P2d 432 (1959).

■ In order to constitute an unconstitutional discrimination in such a case we have held that "arbitrary and systematic discrimination" is required; that it must be shown that "widespread relative nonuniformity exists," and that "relative, not absolute, uniformity" of assessment is sufficient to satisfy the requirement of the Oregon Constitution. *See Penn Phillips Lands v. Tax Com., supra,* at 385 ("Penn I"), and *Commonwealth, Inc. v. Dept. of Rev.,* 259 Or 140, 146, 484 P2d 1103 (1971). *Cf. Reynolds Metals Co. v. State Tax Com.,* 227 Or 467, 472-73, 362 P2d 705 (1961).

In *Penn Phillips Lands v. Dept. of Rev., supra,* at 498-99 ("Penn III"), we reversed a holding by the tax court that the fact that identical adjacent lands included in "operating ranches" were assessed at $4 and $7 per acre, based on "new 1965 farm values," provided a sufficient basis for a contention of unconstitutional discrimination, although holding (at 499) that "[i]t may be that the assessor should reappraise and reassess some of the adjacent lands."

Similarly, in this case, the testimony was that the assessed valuation of similar "rangelands" as class 5-3-1 "farm use" property, when used as parts of operating ranches at values of from $10 to $20 per acre, was also based upon a study of the market value of such property "arrived at from sales studies." It is also to be noted that according to the Assessor of Harney County, the class 5-3-1 "farm use" property did not constitute "the great majority" of the land in Harney County, as stated in the original opinion by the tax court, but constituted only 37,714 acres, or approximately two percent of all privately owned land in the county, compared with 189,548 acres classified

as 8-0-0 "recreation" property, or approximately 12 percent of the privately owned land, of which plaintiff owned 20,000 acres, or approximately 11 percent of that class of property.

It may be, as in *Penn Phillips Lands v. Dept. of Rev., supra* ("Penn III"), that some of the adjacent tracts of land should be reappraised and reassessed. We hold, however, that under these facts and circumstances the tax court erred in holding that there had been unconstitutional discrimination.[6]

Plaintiff says that:

"* * * The focal point of the case was, and remains, whether the classification of plaintiff's land parcels as recreational rather than agricultural was arbitrary, unfounded in fact, and a denial of uniformity. * * *"

For reasons previously stated, we hold that the separate classification of plaintiff's land parcels was not arbitrary because the valuations of the parcels of land in that classification were based upon actual sales prices of such parcels. The fact that the new classification was called "recreational" and that such lands were not shown to have been used for "recreation" is not controlling, in our opinion. Neither is the fact that some other identical lands, when held and used as parts of operating ranches, were assessed as "farm use" property at lower values, for reasons previously stated. The controlling fact, in our opinion, is that a separate classification was justified for the lands placed in the 8-0-0 class.

Finally, the tax court held (and plaintiff contends)

_____

[6]The reliance by the tax court (and also by plaintiff) upon our earlier decision in *Penn Phillips Lands v. Tax Com.,* 247 Or 380, 430 P2d 349 (1967) ("Penn I"), as authority in support of its holding of unconstitutional discrimination is also misplaced, in our opinion. As pointed out in our subsequent decision in *Penn Phillips Lands v. Dept. of Rev.,* 255 Or 488, 498, 468 P2d 646 (1970) ("Penn III"), at the time of that appraisal of the plaintiff's property, "all of the property in the northern part of Lake County, other than plaintiff's property, had not been reappraised," but "only plaintiff's property had been reappraised" and "at rates much higher than all of the other property in the area. * * *" Clearly, this was a "systematic denial of uniformity," but such facts are not present in this case.

that the prices at which plaintiff's land parcels were sold should be disregarded in determining the "true cash value" of such lands because "* * * the sales used to determine the values of the Meadowland area 8-0-0 class property were not based on purchases by informed buyers. The preponderance of the testimony proved that most of the property was purchased by out-of-state buyers, sight unseen. * * *"

Plaintiff's complaint in this case alleged that its property "is assessed at $1,952,240 and plaintiff claims a value of $401,970." Accordingly, plaintiff assumed the burden of proof to establish this allegation, including the allegation that the assessment of the value of its property was incorrect. We do not believe that evidence to the effect that most of the sales were made to out-of-state purchasers, "sight unseen," is sufficient, in and of itself, to sustain plaintiff's burden of proof.

As previously stated, evidence was offered by defendant that the assessed value of plaintiff's property was based upon "market data" consisting of hundreds of actual sales. Plaintiff did not offer any sales brochures, advertisements, or other evidence to show how these lands were described or represented by plaintiff to the purchasers of such lands. Neither did plaintiff produce the testimony of any purchasers who claimed to have been "uninformed" or any other witness to testify that sales by plaintiff were at prices in excess of the "cash market value" of the tracts involved.

Indeed, plaintiff, as the promoter of the real estate development and the seller of over 1,400 separate tracts of land, mostly under unrecorded real estate contracts, is hardly in a position to contend that the land was not worth what it was sold for or that an appraised value of 15 percent below actual sales prices is excessive. There was also evidence that some of such parcels had been subsequently resold at even higher prices.

For all of these reasons, the decision of the tax court must be reversed.