IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

JOHN GROTJOHN )
and SYLVIA GROTJOHN, )
)
      Plaintiffs, ) TC-MD 140216N
)
    v. )
)
KLAMATH COUNTY ASSESSOR, )
)
      Defendant. ) **FINAL DECISION**

This Final Decision incorporates without change the court's Decision entered January 27, 2015. The court did not receive a request for an award of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 16.

Plaintiffs appeal the real market value of property identified as Account R886215 (subject property) for the 2013-14 tax year. A telephone trial was held on December 17, 2014. John Grotjohn (Grotjohn) appeared and testified on behalf of Plaintiffs. Leonard Hill, Klamath County Assessor, and Margaret Kenneally, Chief Appraiser (Kenneally), appeared on behalf of Defendant. Kenneally testified on behalf of Defendant. No exhibits were received from Defendant.

## I. STATEMENT OF FACTS

Defendant's property tax records describe the subject property as a manufactured structure built in 1995 and located on 1.14 acres in Crescent, Oregon. (Def's Ex B at 1A-1B; *see also* Ptfs' Ex 2.) In their Complaint, Plaintiffs wrote that "there had been no changes to the [subject] property which would account for the increase ($8,940)" from the 2012-13 to the 2013-14 tax year. (Compl at 2.) Grotjohn testified that he filed this appeal because he is concerned about Defendant's "unfair, inconsistent, and inequitable" property tax assessment practices. His

trial testimony focused primarily on the discrepancies and inconsistencies that he has discovered in Defendant's property tax records, both with respect to the subject property and with respect to neighboring properties.

Kenneally testified that in 2013 Defendant made a physical reappraisal of "area J," which includes the subject property. (*See* Def's Exs, Intro at 1.) She testified that Defendant had not physically appraised "area J" since the 2001-02 tax year. (*See id.*) Kenneally testified that she inspected the subject property on August 20, 2013, and observed that Defendant's property tax assessment records did not include the subject property's two decks, two roofs, and concrete block foundation. (*See id.*) She testified that she used the Department of Revenue's Cost Factor Book to determine that the real market value of those items totaled $8,940, which she included in the subject property's 2013-14 real market value. (*See* Def's Exs, Intro at 2; Def's Ex E.) Kenneally testified that Defendant's process is to add missing items "as-is" to the tax roll. She stated at trial that the missing items were not added as exception value. No evidence was presented that Defendant added the missing items as omitted property.

Grotjohn testified that he thinks Defendant inspected the subject property at least four times prior to 2013, noting that Defendant's records do not consistently identify the date of Defendant's last appraisal of the subject property. (*See* Ptfs' Ex 14 at 3 (identifying date of last appraisal as "03/01/02"); Def's Ex B at 1A-1B (identifying date of last appraisal both as "06/11/99" and "04/12/00").)

Grotjohn testified that Plaintiffs have lived at the subject property for the past 19 years. He testified that the subject property's two porches (which Defendant described as decks) and its cinder block skirting (which Defendant described as a concrete block foundation) were not new and have existed since 1997. (*See* Ptfs' Ex 16 ($1,764 invoice dated "8-4-97" from Stone Creek

Masonry for "block foundation").) Grotjohn testified that Defendant's real market value assigned to the cinder block skirting is excessive in light of Plaintiffs' actual cost of $1,764. (*See id.*) He testified that the subject property includes one 9-by-12 foot porch and one 9-by-13 foot porch, each of which he built himself for a total cost of $160. Grotjohn testified that there was no labor cost associated with the porches because he provided the labor. He testified that one porch is cedar and the other is redwood. Grotjohn testified that the subject property's roofs were added in 2008 after the former roof collapsed under heavy rain and snow. He testified that a contractor told him Plaintiffs did not need a permit for roof maintenance and repair. Grotjohn testified that he thought the roof repair was "minor construction."

Grotjohn provided a copy of Defendant's property tax assessment record for the subject property, dated "02/16/14," which stated that subject property included a "CONC BLK FDN" with a cost new of $5,000; a "9x30" roof with a unit price[1] of 7.25 and a cost new of $1,958; a "9x13" roof with a unit price of 7.25 and a cost new of $848; a "9x12" deck with a unit price of 5 and a cost new of $540; and a "9x13" deck with a unit price of 5 and a cost new of $585. (Ptfs' Ex 4 at 2.) Grotjohn testified that Defendant's assessment of the subject property's foundation, decks, and roofs is inconsistent with its assessments of neighboring properties. (*See* Ptfs' Exs 9-13 (assessment records for neighboring properties).) He testified that Defendant valued all decks at $5 per square foot regardless of age. (*See* Ptfs' Exs 5-13.) Grotjohn testified that Defendant's roof values ranged from $4.75 to $5.40 per square foot. (*See id.*) He testified that concrete block foundations were all assigned a cost new of $5,000 regardless of age.[2] (*See id.*) Grotjohn testified that Defendant's assessment records are also inconsistent with respect to

---

[1] The record does not identify the applicable unit, such as dollar per square foot.

[2] Defendant's records reveal that one concrete block foundation was valued at $10,000. (Ptfs' Ex 10 at 1.)

the amount of depreciation subtracted for foundations. (*See id.*) He testified that several of his neighbors' properties included items that were not reflected in Defendant's property tax assessment records. (*Cf.* Ptfs' Exs 3 (numerous missing items), 11 at 1 (missing foundation).)

Kenneally testified that Defendant's foundation value of $5,000 was based on its study. (*See* Def's Ex E at 1.) Defendant provided a copy of that study, "Manufactured Homes Reappraisal 1997-1998," which stated that information for the study was provided by "Valley Home Center," "Advanced Housing Systems of Oregon," "Homes America, Inc.," and "Contractor for Homes America Inc." (*Id.*) It provided codes for "$2,500 single wide"; "$5,000 double wide"; and "$7,500 triple wide." (*Id.*) Kenneally testified that none of the foundations should have been depreciated. Defendant provided an excerpt from the 1997-98 Cost Factor Book for Klamath County Residential Building reporting a unit cost range of 3.50 to 12.50 for a "DCK" and a unit cost range of 3.95 to 10.00 for a "ROF."[3] (*Id.* at 3.) The unit cost ranges are related to categories labeled A through E or F. (*Id.*)

Grotjohn testified that he analyzed the value per acre of the subject property as well as that of six neighboring properties, finding a land real market value range of $14,400 to $27,000 per acre. (*See* Ptfs' Ex 2.) He testified that all of the properties are very similar and he could find no basis for the different land values. Kenneally testified that, as required by statute, land real market value includes onsite developments in addition to the bare land value.

The subject property's 2013-14 tax roll real market value, sustained by the board of property tax appeals, was $46,340. (Compl at 4.) Its 2013-14 maximum assessed value and assessed value were both $43,060. (*Id.*) Plaintiffs request a 2013-14 real market value of $35,994. (*Id.* at 1.) Defendant requests that the tax roll value be sustained.

---

[3] The applicable unit is not identified.

## II. ANALYSIS

The issue before the court is the subject property's real market value for the 2013-14 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD 020869D, WL 21263620 at *2 (Mar 26, 2003). Real market value is defined in ORS 308.205(1),[4] which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2013-14 tax year was January 1, 2013. *See* ORS 308.007; ORS 308.210.

Real market value "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2). The three approaches of value that must be considered are: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. OAR 150-308.205-(A)(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id.*

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.,* 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)). "Competent evidence includes appraisal reports and sales

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD 110300D at 7 (Mar 13, 2012). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

A.      *Real Market Value Evidence*

Plaintiffs failed to present any competent evidence of the subject property's real market value as of January 1, 2013, under any of the three recognized approaches of value. Plaintiffs' evidence and trial testimony focused on the value of several components of the subject property and on perceived discrepancies with Defendant's property tax assessments of neighboring properties. Plaintiffs provided testimony and evidence in support of their claim that subject property's roofs, decks, and foundation were overvalued based on the actual cost of those components.[5] With respect to the subject property's foundation, Plaintiffs provided an invoice stating that they paid $1,764 in 1997. With respect to the decks, Grotjohn testified that he paid no more than $160 for the materials in 1997 and contributed his own labor.

"In the cost approach, the value of a property is derived by adding the estimated value of the land to the current cost of constructing a reproduction or replacement for the improvements and then subtracting the amount of depreciation * * * in the structure from all causes." Appraisal Institute, *The Appraisal of Real Estate* 63 (12th ed 2001), quoted in *Magno v. Dept. of Rev.* (*Magno*), 19 OTR 51, 55 (2006). The cost approach is "particularly useful in valuing new or

---

[5] Plaintiffs characterize the components as roofs, porches, and cinder block skirting. The court uses the terms found in Defendant's records.

nearly new improvements," *id*., but is "less useful where the evidence of cost is incomplete, distorted, or otherwise unreliable[,]" *Magno*, 19 OTR at 55. Here, Plaintiffs' cost evidence is incomplete and unreliable. Plaintiffs did not present any evidence of the subject property's land value or of the cost to reproduce or replace the subject property's improvements. Plaintiffs' limited cost evidence is not "current" as of January 1, 2013, and fails to include the cost of labor.

Defendant also presented some cost evidence in the form of excerpts from two Cost Factor Books and a 1997-98 study on the cost of foundations. That evidence tends to support the costs that Defendant assigned to the subject property's roofs, decks, and foundations, but does not provide a complete cost approach real market value indication for the subject property. Although the court has authority to determine the real market value or correct valuation on the basis of the evidence before the court, the court concludes that it did not receive sufficient evidence from which to determine the subject property's 2013-14 real market value.

B.    *New Improvements to Property and Omitted Property*

Kenneally stated that, although the subject property's roofs, decks, and foundation were not reflected in Defendant's records prior to the 2013-14 tax year, Defendant did not add any exception value for those items. Although Plaintiffs admitted that those items all existed since at least 2008, there is no evidence that Defendant added them as omitted property in this case. Nevertheless, Plaintiffs made arguments that relate to exception value and omitted property assessments. Grotjohn testified that he thought roof repair was "minor construction." That term relates to the concept of exception value and has no relevance in this case. *Cf. Magno*, 19 OTR at 62-63 (discussing exception value and minor construction).

Grotjohn testified that Defendant's property tax records indicated that the subject property had been physically appraised on several occasions after 1997, the year in which the

foundation and decks were built. ORS 311.216(1) authorizes the county assessor to add previously omitted property to the tax and assessment rolls for the current tax year and up to five years prior to the last certified roll. However,

> "[i]mprovements which are in existence and are an integral part of property which is physically appraised may not later be revalued and added as omitted property under ORS 311.216. Undervaluation of a property due to the assessor's failure to consider a portion of the property is not omitted property correctable under 311.216."

OAR 150-311.216(3); *see West Foods v. Dept. of Rev.*, 10 OTR 7, 11 (1985) (holding appraiser's failure to include integral part of realty resulted in undervaluation, not omission); *Clackamas Cty Assessor v. Village at Main St. Phase II*, 349 Or 330, 346, 245 P3d 81 (2010) (concluding that site developments were integral part of land listed on tax and assessment rolls and therefore were not omitted property). Defendant did not assess omitted property in this case, so Plaintiffs' evidence that the subject property's decks and foundation existed as of Defendant's prior physical inspections is irrelevant.

C.     *Uniformity*

Grotjohn testified that, in his view, Defendant's property tax assessments of the subject property and similar neighboring properties are inconsistent. Specifically, Grotjohn noted inconsistencies among the real market values assigned to land and to certain improvements (roofs, decks, and foundations). He also objected to Defendant's failure to assess certain improvements to neighboring properties. The court understands Grotjohn's arguments to be a uniformity complaint with respect to Defendant's determination of the subject property's real market value as compared to properties within the same class.

Article I, section 32, of the Oregon Constitution states, in part, that "all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the

tax." ORS 307.030(1) states that "[a]ll real property within this state * * *, except as otherwise provided by law, shall be subject to assessment and taxation in equal and ratable proportion." "What is required in Oregon is 'relative' uniformity, that is, uniform operation of law, not uniformity of consequences." *Chart Development Corp. v. Dept of Rev.*, 16 OTR 9, 15 (2001) (citing *Robinson et ux v. State Tax Com.*, 216 Or 532, 536, 339 P2d 432 (1959)). "Merely showing that other properties have lower values does not prove the lack of uniformity. That is because different values could be the result of different features or characteristics and not the result of the application of a different valuation methodology to apparently similar properties." *Id*.

In *Meadowland Ranches v. Dept. of Rev.* (*Meadowland*), 277 Or 769, 776, 562 P2d 183 (1977), the Oregon Supreme Court held that "[i]n order to constitute an unconstitutional discrimination * * * 'arbitrary and systematic discrimination' is required; that it must be shown that 'widespread relative nonuniformity exists,' and that 'relative, not absolute, uniformity' of assessment is sufficient to satisfy the requirement of the Oregon Constitution." In *Meadowland*, the county assessor had created a new recreational property class based on a "sales market study" of unimproved sagebrush land sales. *Id.* at 771. The plaintiff asserted unconstitutional discrimination because, as a result of that study and new classification, "one tract of land would be classed as 8-0-0 property and valued at $145 per acre, while another identical tract would be classed as 5-3-1 property and valued at $20 per acre." *Id.* at 773. The Court concluded that the county assessor's classification did not constitute unconstitutional discrimination because the new classification and values established by the county "were based upon and supported by a 'sales market study' of numerous actual sales at prices in excess of the values adopted as the

/ / /

assessed value of plaintiff's lands." *Id.* at 775. Thus, the court concluded the classification was not "arbitrary." *Id.* at 777.

Plaintiffs have failed to establish unconstitutional discrimination by Defendant in the determination of the subject property's 2013-14 real market value. With respect to the variation in land real market values, Defendant correctly explained that land real market values include the value of site developments. *See* ORS 307.010(1)(a) ("land includes any site development made to the land"). Furthermore, different land real market values may be attributable to differences such as site size and shape, topography, and view. Plaintiffs presented no evidence that Defendant engaged in unconstitutional discrimination in determining the subject property's land real market value as compared with the land real market values of neighboring parcels.

Similarly, the court finds no evidence of unconstitutional discrimination with respect to Defendant's improvement real market value. Defendant's values for the subject property's roofs, decks, and foundation were relatively consistent with other properties and supported by studies. Specifically, Defendant provided a copy of its 1997-98 study on the cost of concrete block foundations and it provided excerpts from the Department of Revenue's Cost Factor Book supporting its cost determinations for roofs and decks. As with land real market values, differences in improvement real market values may be attributable to the age and quality of materials used, among other factors.

III. CONCLUSION

After careful consideration, the court concludes that Plaintiffs failed to present competent evidence of the subject property's real market value as of January 1, 2013. The court further concludes that it did not receive sufficient evidence to determine the subject property's correct 2013-14 real market value under ORS 305.412. The court further concludes that

Plaintiffs failed to present evidence that Defendant's determination of the subject property's

2013-14 real market value was based on unconstitutional discrimination. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of February 2015.


_____
ALLISON R. BOOMER
MAGISTRATE


*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the final decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on February 13, 2015. The court filed and entered this document on February 13, 2015.*